UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | |
|---|---|
| TINA BYRD ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 1:12-cv-55 SNLJ |
| ) | |
| PATRICIA A. BORTHWICK, D.O. ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM AND ORDER

Plaintiff Tina Byrd brought this medical malpractice action against defendant Dr. Patricia Borthwick. Defendant has moved for summary judgment based on the statute of limitations (#18). The matter has been fully briefed and is now ripe for disposition.

**I.    Background**

The following facts are undisputed except where indicated. In October 2000, plaintiff was evaluated by defendant for an abnormal pap smear and for complaints of chronic pelvic pain. Defendant ultimately diagnosed plaintiff with carcinoma in situ, which is a pre-cancerous condition of the cervix. Defendant surgically removed plaintiff's uterus and cervix on January 8, 2001. Plaintiff continued to complain of pelvic pain, so defendant surgically removed plaintiff's ovaries on March 12, 2001. Defendant prescribed Premarin as hormonal therapy for plaintiff following the loss of her ovaries. Plaintiff saw defendant on April 18, 2002, and defendant performed a pap smear and renewed the Premarin prescription. The lab indicated the sample was insufficient for evaluation, so defendant performed a repeat pap smear on June 4, 2002. On June 12, 2002, defendant reviewed the results of the second pap smear, which indicated that the sample had been "within normal limits."

The parties disagree over the nature of the April 18 visit. Defendant contends that it was plaintiff's "annual well woman visit" and that the pap smear was "routine." Plaintiff disputes that the pap smear was "routine" because she says defendant advised her that she would need pap smears and other regular monitoring as a result of her in situ carcinoma diagnosis and surgeries. Plaintiff also notes that she continued to complain of abdominal pain throughout her visits with defendant. For example, plaintiff complained of pelvic pain at appointments in October 2000, November 2000, February 2001, March 2001, May 2001, September 2001,October 2001. Plaintiff's medical record shows that she complained of pelvic pain at the April 18 visit, and defendant referred plaintiff to a gastrointestinal doctor.

Plaintiff originally filed this action in the Circuit Court of Scott County on June 10, 2004. This case was ultimately removed to this Court pursuant to the Court's diversity jurisdiction.

## II. Legal Standard

Pursuant to Federal Rule of Civil Procedure 56(c), a district court may grant a motion for summary judgment if all of the information before the court demonstrates that "there is no genuine issue as to material fact and the moving party is entitled to judgment as a matter of law." *Poller v. Columbia Broadcasting System, Inc.*, 368 U.S. 464, 467 (1962). The burden is on the moving party. *City of Mt. Pleasant, Iowa v. Assoc. Elec. Co-op., Inc.*, 838 F.2d 268, 273 (8th Cir. 1988). After the moving party discharges this burden, the nonmoving party must do more than show that there is some doubt as to the facts. *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Instead, the nonmoving party bears the burden of setting forth specific facts showing that there is sufficient evidence in its favor to allow a jury to return a verdict for it. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).

In ruling on a motion for summary judgment, the court must review the facts in a light most favorable to the party opposing the motion and give that party the benefit of any inferences that logically can be drawn from those facts. *Buller v. Buechler*, 706 F.2d 844, 846 (8th Cir. 1983). The court is required to resolve all conflicts of evidence in favor of the nonmoving party. *Robert Johnson Grain Co. v. Chem. Interchange Co.*, 541 F.2d 207, 210 (8th Cir. 1976). With these principles in mind, the Court turns to the discussion.

## III.    Discussion

Defendant argues that she should be granted summary judgment because plaintiff filed her claim after the statute of limitations expired. Under Missouri law, which the parties agree applies in this diversity action, medical malpractice actions must be filed "within two years from the date of occurrence of the act of neglect complained of..." § 516.105 R.S.Mo. Plaintiff alleges that defendant was negligent in that she

> a) failed to properly evaluate Plaintiffs symptoms including but not limited to abdominal pain, pelvic pain, and abnormal pap smear;
>
> b) failed to provide adequate and proper treatment for Plaintiffs condition of carcinoma in situ;
>
> c) recommended and urged Plaintiff to undergo an unnecessary hysterectomy in lieu of other available treatments for Plaintiffs condition, including, but not limited to continued observation;
>
> d) failed to advise and inform Plaintiff of treatments available to her for the condition of carcinoma in situ;
>
> e) performed an unnecessary hysterectomy upon Plaintiff;
>
> f) undertook operative procedures upon Plaintiff without first obtaining and [sic] informed consent thereto;
>
> g) performed unnecessary bilateral oophorectomies as a continuance of the original surgical plan beginning with the hysterectomy.

*Cmplt.* ¶ 5. Defendant points out that plaintiff's June 10, 2004 complaint was filed more than three years after her hysterectomy and ovary removal were performed and more than two years after defendant last physically examined the plaintiff (when she performed a pap smear on June 4, 2002).

However, "[t]he statute does not begin to run against a plaintiff patient until treatment by the medical defendant ceases 'where the treatment is continuing and of such nature as to charge the medical [provider] with the duty of continuing care and treatment which is essential to recovery until the relation ceases....'." *Montgomery v. S. County Radiologists, Inc.*, 49 S.W.3d 191, 194 (Mo. 2001) (quoting and citing *Thatcher v. De Tar*, 173 S.W.2d 760, 762 (Mo. 1943); *Weiss v. Rojanasathit*, 975 S.W.2d 113, 119 (Mo. banc 1998)).

Plaintiff contends that the "continuing care exception" described above applies to save her claim because, after defendant removed plaintiff's uterus and ovaries, defendant had a duty of continuing care and in fact continued to see and treat plaintiff for her continued pelvic pain and to screen plaintiff for return of cervical cancer. Plaintiff states that the defendant's treatment thus continued until defendant read the results of plaintiff's repeat pap smear on June 12, 2002, which was less than two years before plaintiff filed this suit on June 10, 2004.

Defendant argues that the continuing care exception does not apply here. The "continuing care exception provides that the statute begins to run when the defendant ceases to treat the injury caused by the act of negligence and neglect." *Brickey v. Concerned Care of Midwest, Inc.*, 988 S.W.2d 592, 597 (Mo. Ct. App. 1999). Defendant maintains that she was not treating plaintiff for the injuries complained of (scarring, continuous abdominal pain, inability to conceive) within two years of June 10, 2004, and thus the continuing care exception does not apply. All defendant did within two years of this suit's commencement was to read the results of

4

the pap smear, and defendant insists that the pap smear was unrelated to her earlier treatment of the plaintiff. Instead, defendant says that the pap smear was incident to plaintiff's April 2002 "annual well-woman exam," and that any woman would have needed it at her well-woman exam. Thus, defendant says, the treatment she provided on June 12, 2002 did not constitute continuing care so as to toll the statute of limitations.

Plaintiff responds that defendant's June 12, 2002 read of the pap smear constitutes continuing care of her condition such that the June 10, 2004 complaint was timely filed.[1] The Court acknowledges that this case presents what may appear to be a close call. However, plaintiff asserts that defendant told her that her cancerous condition — treated by defendant — would require followup care including exams, including pap smears, to monitor whether the cancer had spread. Further, defendant testified that she withheld judgment about further medical treatment under after she reviewed plaintiff's pap smear results. Missouri courts appear to consider such activity to be "treatment" that meets the continuing care definition. "Treatment includes measures necessary for the physical well being of the patient. Also, 'treatment' has been described as 'covering all the steps taken to effect a cure of an injury or disease; including examination and diagnosis as well as application of remedies.'" *Cole v. Ferrell-Duncan Clinic*, 185 S.W.3d 740, (Mo. Ct. App. 2006) (quoting and citing *Reynolds v. Dennison*, 981 S.W.2d 641, 642 n.1 (Mo. Ct. App. 1998) and Black's Law Dictionary, 1502 (6th ed. 1990)). Relying on *Montgomery*, in which the Missouri Supreme Court held that consecutive x-ray reads by a radiology group constituted treatment subject to the continuing care exception, 49 S.W.3d at 195,

---

[1] Plaintiff also argues that defendant's prescription of premarin constitutes continued care through the duration of the ordered prescription. Plaintiff cites no precedential law to support that statement. In light of the Court's holding, the Court need not address it here in light of the Court's holding.

the *Cole* court held that prostate screenings are similarly "treatments." 185 S.W.3d at 746. In *Cole*, the prostate screenings were — as here — performed to detect the presence of cancer, but that patient had not yet been diagnosed with cancer. It was only later, different prostate screenings that revealed that plaintiff's cancer diagnosis. *Id.* at 745-46. Here, defendant advised plaintiff that she would affirmatively require pap smears to determine whether her cancer had spread, and defendant testified that she withheld judgment regarding plaintiff's future medical care until she read the pap smear results. Defendant's read of the pap smear results were thus inextricably tied to defendant's continued care for the condition plaintiff complains of here.

The Court thus holds that plaintiff's complaint was timely filed when it was filed within two years of defendant's analysis of the pap smear results.

## IV. Conclusion

The defendant's motion for summary judgment shall be denied.

Accordingly,

**IT IS HEREBY ORDERED** that defendant's motion for summary judgment (#18) is **DENIED**.

Dated this  2nd  day of April, 2013.

_____
STEPHEN N. LIMBAUGH, JR.
UNITED STATES DISTRICT JUDGE